**In re DUCLAUX.**

Patent Appeal No. 3164.

Court of Customs and Patent Appeals.

Dec. 4, 1933.

Vernon M. Dorsey, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This appeal seeks a review by this court of the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner denying patentability, in view of the prior art, of the two claims involved in appellant's application, entitled, broadly, "Improvements in 'Reinforced Glass Sheet and Method of Manufacturing the Same.'"

Claim 1 is for the product and reads as follows:

"1. A compound sheet consisting of two sheets of glass having interposed between them a strengthening sheet of other transparent material, the inner faces of the glass sheets which are in contact with the strengthening sheet being ground and smoothed and the indices of refraction and the dispersion being approximately the same for the glass sheets and for the interposed sheet of strengthening material."

Claim 2, for the process, reads:

"2. The heretofore described process of making a compound sheet which consists in interposing a sheet of strengthening material between and in contact with two sheets of glass, the inner faces of the glass sheets which are in contact with the strengthening sheet being ground and smoothed and the indices of refraction and the dispersion being approximately the same for the glass sheets and for the interposed sheet of strengthening material, and uniting said sheets of glass to said sheet of strengthening material."

The references cited are: Wood, 830398, September 4, 1906; Shuman, 1355625, October 12, 1920; Vandier (French), 822664, March 7, 1927; Long, 1668853, May 8, 1928; Brown, 1692619, November 20, 1928.

It will, perhaps, conduce to a better understanding of this case, particularly by those not versed in the glass art, to recite at the outset that, according to the Examiner, the words "grinding," "smoothing," and "polishing," as used in the art, have certain technical meanings.

The Examiner says: "It should perhaps be stated that 'grinding' here means rough grinding, 'smoothing' means intermediate or fine grinding, and 'polishing' means finest grinding, as with rouge" (see pages 474, 475 of Text Book of Glass Technology, Hodkin & Cousen, D. Van Norstrand Co.).

Appellant's application contains no drawing, and the specification is quite brief. It recites that reinforced glass is commonly made by cementing a strengthening sheet of transparent and nonbrittle substance between two sheets of glass, and the particular feature

for which novelty and invention are claimed apparently lies, as expressed in the specification, in "grinding and smoothing only the surfaces of the two glass sheets which are in contact with the strengthening sheet."

In other words, as we understand the operation, appellant grinds and smooths but does not polish the inner surfaces of the two glass sheets between which the strengthening material is interposed, and, according to the specification, these not being polished, striations are left in the surfaces of the sheet, but these are "rendered invisible" by the interposition of the strengthening sheet, "provided that said strengthening sheet has at least superficially the same refractive index and dispersion as the two external sheets of glass."

It is claimed that the omission of the polishing operation (which operation, it is insisted, is used, or "proposed," in the prior art, in addition to the grinding operation, to overcome conditions due to irregularity in the surfaces of sheets of glass drawn or rolled) materially lessens the cost of production.

Neither the specification nor the claims designate eo nomine any particular transparent material to be used as a strengthening sheet for interposition between the glass sheets, and no claim is made that any novelty resides in this feature, nor is there any claim of novelty in the "indices of refraction and the dispersion" feature. Some of the cited patents teach the use of different substances for an interposing strengthening sheet, to be used in their respective operations, such as a cellulose composition, celluloid, and the like.

In the final analysis, the issue must turn upon the effect of appellant's omission to polish—that is, whether this is patentable or nonpatentable in view of the prior art.

The specification of the patent to Brown teaches the use, in making laminated glass, of a nonbrittle material "such as a cellulose composition," interposed between sheets of glass having slight waves or corrugations therein, but whose inner surfaces, at least, as stated relative to what is designated as bullet-proof glass, "are not ground and polished."

The specification alludes, in one place, to sheet glass produced on the Colburn type of machine, but whether Brown confines himself to use of this one type does not clearly appear. None of his claims mentions this type by name.

It seems to us that Brown clearly teaches the use of sheets of glass neither ground **nor** polished on their inner surfaces, but having waves or corrugations whose effects in distorting vision are overcome by the arrangement which he describes, one feature of which is the interposition of the transparent material between them, the union being made by the application of heat and pressure.

The Shuman patent relates to wire glass, and the specification recites:

"In constructing my improved wire glass, I unite a sheet of wire glass (preferably having one surface polished) to a sheet of plain glass (also preferably having one surface polished) by a sheet of celluloid, gelatin or any similar transparent or translucent material of organic composition which may be welded or attached to the glass by any of the processes at present well known, the celluloid or gelatin carbonizing under action of heat and thus presenting a more or less athermic layer to stop the passage of the radiant heat."

At another point in that specification it is said:

" * * * The surfaces of the wire glass may be polished or not, as desired, but in the most approved form of my present invention, I prefer that the surface be welded to the celluloid or its equivalent shall be polished. The reinforce glass layer B and B' may be of any suitable glass but preferably polished plate, or at least having one of its surfaces polished. The layer C is preferably a sheet of celluloid welded or cemented or pasted to the glass surfaces."

The patent to Long is for a process of uniting vitreous pieces "such as glass," and the specification states:

"In carrying out my invention, the surfaces to be joined are carefully finished to fit one against the other throughout the joint to be made. However, in so finishing the surfaces I avoid polishing the same, although the surfaces should be relatively smooth. I have found that a surface produced by grinding with the finest emery is suitable for the joint hereinafter described, whereas a polished surface finished with rouge is not suitable. I paint the two surfaces so prepared with a solution of a synthetic resin such as a phenol and formaldehyde condensation product, for instance bakelite dissolved in a suitable solvent such as ethyl or methyl alcohol, or acetone, etc., the former being preferred."

In view of the fact that there is no real contention here upon the "refraction and diversion" feature of the material interposed, that need receive no further attention. It seems to be present in all the references cited

with a use entirely similar to the use made of it by appellant.

We are unable to see wherein by omitting the polishing operation appellant has performed an act of invention over the prior art.

It is argued for appellant that, while Brown uses glass not polished in the technical meaning of that term, it is yet a glass which has a natural polish by reason of its method of production. In regard to the glass of Shuman, it is appellant's contention that where Shuman says, "The surfaces ♦ ♦ ♦ may be polished or not, as desired," he "did not mean to say that that surface should be only ground and smoothed but merely that it might be left in its natural state."

We are unable to discern any sound reason for interpreting these specifications as appellant insists—that is for holding that neither Brown nor Shuman used "polished" in its technical sense, but even if that be conceded to be correct, it seems quite clear that Long does use the word in its technical sense.

The argument for appellant against the Long patent as an anticipatory reference seems to be based somewhat upon the character of the glass which his process produces as determined from its use, which use is stated in appellant's brief to be "in the fabrication of mirrors for reflecting telescopes, from an assembly of smaller pieces properly cemented together," and it is urged that:

" ♦ ♦ ♦ Long patent teaches nothing as to the adhesion to be obtained between a preformed sheet of celluloid, etc., and a glass surface by smoothing the latter. It teaches making glass-to-glass joints with a liquid adhesive merely filling the microscopic depressions in the glass surfaces, the protuberances on which surfaces are substantially in contact with each other and interlaced with each other."

We find nothing in the Long patent itself which limits his glass to the use mentioned in the brief, but, however this may be, the Long process obviously is one by which laminated glass is produced by using pieces having ground but unpolished surfaces cemented together with a transparent material.

In view of the specific teachings of the several patents cited from the prior art, we are unable to discern wherein there was any exercise of the inventive faculty in pursuing the course outlined by appellant. It would seem to require nothing more than the exercise of skill by one familiar with the art.

The decision of the Board of Appeals is affirmed.

Affirmed.